UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Evelyn C. R., <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:22-CV-01288-TOF <br><br><br> December 31, 2023 |

**RULING ON PENDING MOTIONS**

The Plaintiff, Evelyn C. R.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Supplemental Security Income ("SSI") and Disability Insurance ("DI") benefits under Titles XVI and II of the Social Security Act, respectively. (Compl., ECF No. 1.) She has moved the Court to "reverse the decision of the Commissioner . . . and award her [DI] and [SSI] benefits, or, in the alternative, to reverse and remand the cause for rehearing." (ECF No. 16.) The Commissioner has moved for an order affirming the decision. (ECF No. 21.)

The Plaintiff makes several claims of error, the first of which is an argument that the Administrative Law Judge ("ALJ") failed properly to consider her diagnosis of osteoarthritis and her claims of related functional limitation. (ECF No. 16-2, at 2-4.) Having carefully considered the parties' submissions, and having carefully reviewed the entire, 5,600-page administrative record, the Court agrees with the Plaintiff on this point. Accordingly, the Plaintiff's Motion to

---

[1]   Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "the Plaintiff" throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

1

Reverse the Decision of the Commissioner (ECF No. 16) will be granted to the extent that it seeks an order reversing the ALJ's decision and remanding the case to the Commissioner for further administrative proceedings.  The Commissioner's Motion for an Order to Affirm the Decision (ECF No. 21) will be denied.  The Court's order is set forth in Section IV below.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff filed an application for Title XVI SSI benefits on August 1, 2018.  (R. 443-51.)  She then applied for Title II DI benefits on September 12, 2018.  (R. 439-42.)  In her applications, the Plaintiff claimed that she could not work because of stage 3 thyroid cancer, depression, anxiety, glaucoma, high blood pressure, prediabetes, and liver/stomach conditions.  (R. 483.)  She did not then mention osteoarthritis.  (*See id.*)  She alleged a disability onset date of March 1, 2017 (R. 21), although she later amended this to May 17, 2019.  (R. 57.)

The Social Security Administration ("SSA" or "Administration") denied the Plaintiff's claims at the initial level on February 11, 2019.  (R. 156-57.)  In the accompanying explanation, a non-examining state agency medical consultant opined that all the Plaintiff's medical impairments were "non-severe."  (R. 148-49.)  A non-examining psychological consultant observed that the Plaintiff had the severe impairment of depression, but nonetheless concluded that she was "capable of simple work, with limitations[.]"  (R. 150.)  Presumably because the Plaintiff had not mentioned it in her application – and because the record evidently did not yet contain a formal diagnosis – neither the consultants nor the disability claims examiner addressed her osteoarthritis.  (*See generally* R. 138-55.)

Around the time of the initial decision, references to knee problems and osteoarthritis began to appear in the Plaintiff's medical records. A few months before the decision, the Plaintiff visited her primary care physician, Dr. Elizabeth Solano, for "pain in [her] left leg" and "knee

buckling." (R. 1643.)  She told Dr. Solano that she had fallen three times in the preceding four weeks, "with [two] falls being traumatic." (*Id.*)  She stated that she had had no other falls since these four, but that her knee was nevertheless "becoming increasingly unstable." (*Id.*)  Dr. Solano's physical exam detected "mild effusion and lateral tenderness" in the left knee, and she referred the Plaintiff for x-rays and an MRI study.  (R. 1643-44.)

While this study was never conducted – apparently for insurance reasons (R. 2417) – the Plaintiff kept reporting knee pain to her treating physicians.  (*E.g.*, R. 3566.)  On December 18, 2018, her rheumatologist, Dr. Tejas Sheth, began evaluating her for "[p]rimary osteoarthritis of knees, bilateral." (R. 2334.)  On March 8, 2019, a little more than three weeks after the initial claim decision, the Plaintiff reported to Dr. Sheth that she had been experiencing "left-sided knee pain worsening over [the] past few weeks," "worse with activity, going up and down the stairs as well as prolonged standing," and "not associated with any swelling or redness of the joint" or with any "history of direct trauma to the joint." (R. 3566.)  The doctor diagnosed bilateral osteoarthritis of the knees, and prescribed corticosteroid and anesthetic injections.  (R. 3574.)  Ultimately, Dr. Sheth would diagnose the Plaintiff as having "widespread osteoarthritis most symptomatic at the knees," and would report that neither the injection nor physical therapy resolved her symptoms. (R. 3647) (progress note dated June 30, 2020).

Osteoarthritis and knee problems were not the only things that the Plaintiff neglected to mention in her disability application; she also failed to note that she had been diagnosed with fibromyalgia.  As early as October 9, 2017, the Plaintiff's treating providers noted that she "likely" had fibromyalgia.  (R. 701.)  By August 23, 2018, she evidently had a formal diagnosis.  (R. 574.)  In the latter half of 2018 and the first few months of 2019, the medical record is replete with references to fibromyalgia.  (*E.g.*, R. 1351, 1360, 1633, 1644.)

3

The Plaintiff requested reconsideration of the initial decision (R. 231-32), and the SSA denied her claims at the reconsideration level on April 17, 2020. (R. 204.) Between the initial and reconsideration decisions the Administration had noted the fibromyalgia diagnosis, and thus on reconsideration it concluded that the Plaintiff had two severe medical impairments – fibromyalgia and a spinal disorder – in addition to her severe psychological impairment of depression. (R. 194.) A different non-examining state agency medical consultant, Dr. Barbara Coughlin, noted the Plaintiff's claims of knee buckling and falls, but did not note Dr. Sheth's osteoarthritis diagnosis from over a year before. (R. 198.) Dr. Coughlin concluded that the Plaintiff "would be able to stand/walk [six] hours a day with lifting/carrying restrictions" (R. 199), and based in part on this assessment, a disability claims examiner decided that the Plaintiff's condition was "not severe enough to keep [her] from working." (R. 202.)

The Plaintiff then requested a hearing (R. 245), and ALJ John Noel held a hearing on July 15, 2021. (R. 55.) The ALJ asked the Plaintiff why she felt she was unable to work, and she responded that she had "such severe" pain her back, legs and feet that she had "to spend most of the time laying down." (R. 60.) She stated that she could not "even last an hour standing." (R. 61.) On examination by her own attorney, she reiterated that she experienced disabling pain in her "back," "legs," and "arms," and she added that the corticosteroid injections in her knees had "not helped . . . at all." (R. 64-65.)

On November 15, 2021, the ALJ issued an unfavorable decision. (R. 21-44.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Noel's written decision followed that format. At Step One, he found that the Plaintiff had not engaged in substantial gainful activity since her amended onset date of May 17, 2019. (R. 24.) At Step Two,

he found that the Plaintiff suffered from the severe impairments of "[f]ibromyalgia, spine disorders, thyroid gland all disorders (except malignant neoplasm), carpal tunnel syndrome, migraine, depressive, bipolar, and related disorders, and anxiety." (R. 24.)  He considered the additional impairments of gastrointestinal disorders, diabetes mellitus, glaucoma, asthma, and obesity, but concluded that they were non-severe. (R. 24-25.)  So far as his written decision discloses, he did not consider osteoarthritis, knee problems, or hip problems at Step Two. (*Id.*)

At Step Three, the ALJ concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25.)  He then determined that, notwithstanding her impairments, for the period of May 17, 2019 through the date of his decision, the Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except frequently climb ramps and stairs.  Occasionally climb ladders, ropes, or scaffolds.  Frequently stoop.  Occasionally knee [sic].  Frequently crouch.  Occasionally crawl.  Frequently handle and finger.  [She] can perform simple routine tasks, consistent with reasoning levels 1, 2 or 3 of the DOT and have only occasional contact with the public and not work on a team with co-workers.  [She] can use judgment limited to simple work-related decisions and deal with routine changes in the work setting.

(R. 28.)  The ALJ's supporting discussion included detailed analyses of each impairment that he had deemed severe at Step Two, but no similarly detailed discussion of the functional impacts of the non-severe yet medically determinable impairments, let alone of any condition – such as osteoarthritis – that he did not acknowledge as an impairment, severe or otherwise. (R. 30-39.) Indeed, the only discussion of the plaintiff's knee pain was under the heading "fibromyalgia," suggesting that the ALJ regarded that pain as an aspect of fibromyalgia rather than as a symptom or manifestation of osteoarthritis. (R. 30.)

5

Proceeding to Step Four, the ALJ found that the Plaintiff had no past relevant work. (R. 42.) At Step Five, he relied on the testimony of a vocational expert, Jane Gerrish, in concluding that there are a significant number of jobs in the national economy that the Plaintiff could perform, such as linen grader, flagger, and "shaker, wearing apparel." (R. 42-43.) In summary, the ALJ found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged amended onset date of May 17, 2019, through November 15, 2021. (R. 43.)

On December 17, 2021, the Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 436-37.) On September 22, 2022, the Council found "no reason under [its] rules to review the [ALJ's] decision" and, therefore, denied the Plaintiff's request for review. (R. 1.) It added that if the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil action." (R. 2.)

The Plaintiff then filed this action on October 13, 2022. (Compl., ECF No. 1.) The Commissioner answered the complaint by filing the administrative record on December 8, 2022. (ECF No. 12); *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint"). On March 6, 2023, the Plaintiff filed her motion for an order reversing or remanding the Commissioner's decision. (ECF No. 16.) On May 19, 2023, the Commissioner filed a motion for an order affirming that decision. (ECF No. 21.) The Plaintiff did not file a reply brief, and her time for doing so has expired. The parties' motions are therefore ripe for decision.

**II.    APPLICABLE LEGAL PRINCIPLES**

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)); *see also* 20 C.F.R. § 416.905(a).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id*.  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is

7

based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III. DISCUSSION

### A. The Plaintiff's First Claim of Error

The Plaintiff makes several claims of error on appeal to this Court, the first of which is a claim that the ALJ failed to consider or discuss, "either at Steps 2 or 5, or in the context of the RFC," her "frequently treated, widespread osteoarthritis, particularly of her knees and hips." (ECF No. 16-2, at 2.) She asserts that, notwithstanding her testimony "that she lays down most of the time, and that she has had injections in her knees which have not helped," the ALJ failed to address her knee and hip issues at Step Two or in "the discussion thereafter of non-severe medically determined impairments." (*Id.*) She argues that "[f]ailure to consider [her] osteoarthritis of the knees and hips constitutes reversible error." (*Id.* at 4.) The Commissioner argues otherwise (ECF No. 21-1), but the Court agrees with the Plaintiff.

The governing legal principles are well settled. At Step Two of the five-step sequential evaluation process, the ALJ must determine whether the claimant has a severe, medically determinable impairment that has lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), -416.920(a)(4)(ii). The SSA's regulations do not define the term "severe impairment," but instead define "non-severe impairment." *Dawn Lyn C. v. Kijakazi*, No. 3:20-cv-545 (TOF), 2021 WL 4398372, at *4 (D. Conn. Sept. 27, 2021) (quoting *Larkin v. Astrue*, No. 3:12-cv-35 (WIG), 2013 WL 4647243, at *5 (D. Conn. Apr. 29, 2013), *report and recommendation adopted in part, rejected in part*, 2013 WL 4647229 (D. Conn. Aug. 29, 2013)). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), -416.922(a); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). By implication, therefore, a "severe" impairment is one that "significantly limits [a claimant's]

physical or mental ability to do basic work." *Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014) (summary order).

If an ALJ errs at Step Two, a reviewing court will often regard the error as harmless rather than reversible. "When an ALJ finds at least one impairment to be severe, 'the question whether the ALJ characterized any other alleged impairment as severe or not severe' is typically 'of little consequence.'" *Jeffery Z. v. Kijakazi*, No. 3:21-cv-1458 (MPS) (TOF), 2023 WL 8115041, at *1 (D. Conn. Feb. 21, 2023), *report and recommendation approved and adopted*, slip op. (D. Conn. Mar. 9, 2023) (quoting *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012)). "This is because '[u]nder the regulations, once the ALJ determines that a claimant has at least one severe impairment,' he is obliged to 'consider all impairments, severe and non-severe, in the remaining steps' of the sequential evaluation process." *Id.* (quoting *Edgardo R. v. Saul*, No. 3:19-cv-1874 (SDV), 2021 WL 4472720, at *8 (D. Conn. Sept. 30, 2021)). In *Sheila Renee H. v. Kijakazi*, for example, an ALJ failed to identify the plaintiff's claimed "major depression" as a severe impairment at Step Two. No. 3:21-cv-944 (TOF), 2022 WL 4181723, at *9 (D. Conn. Sept. 13, 2022). This Court nevertheless affirmed the decision because "the ALJ considered the Plaintiff's depressive disorder and her consequent limitations at the subsequent steps of the five-step evaluation process." *Id.*

The Commissioner cannot, however, take refuge in this principle unless the ALJ in fact considers all impairments at the later steps. "To find that the error was harmless . . . the Court must also conclude that the ALJ 'specifically considered all severe and non-severe impairments during subsequent steps of the process.'" *Jeffery Z.*, 2023 WL 8115041, at *9 (quoting *Santiago v. Saul*, No. 3:19-cv-1026 (MPS), 2020 WL 5511651, at *2 (D. Conn. Sept. 14, 2020)). "[T]he law is clear that an ALJ must have a sufficient basis for concluding that an impairment is non-

severe, and an unsupported conclusion of non-severity is not harmless if the ALJ failed to consider the impairment's impacts at later stages of the sequential evaluation process." *Id.* at *10 (citing *Rodriguez v. Saul*, No. 19-cv-9066 (JLC), 2021 WL 738348, at *13-14 (S.D.N.Y. Feb. 25, 2021)), and *Cintron v. Berryhill*, No. 1:16-cv-7731 (SDA), 2017 WL 1229731, at *10 (S.D.N.Y. Mar. 6, 2018)). When "the Commissioner fails to consider the omitted impairments at the subsequent steps," "remand is appropriate." *Morshed v. Comm'r of Soc. Sec.*, No. 19-CV-725 (JLS), 2020 WL 5814655, at *5 (W.D.N.Y. Sept. 30, 2020).

*Jeffery Z.* shows these principles in action. In that case, the plaintiff cited spinal and mental disorders when applying for DI benefits under Title II. *Id.* at *2. Between his initial and reconsideration disability determination, his doctors diagnosed him with a different disorder – an anemic blood disorder of "unclear etiology." *Id.* at *3. By the time he got to his hearing before an ALJ, the plaintiff was citing anemia-induced fatigue as a principal reason for his inability to work. *Id.* at *4. The ALJ nevertheless deemed his anemia "non-severe" at Step Two, and he found the plaintiff to be non-disabled. *Id.* On appeal, this Court acknowledged that "an ALJ's finding that an impairment is not severe at Step Two is harmless error when he finds other severe impairments and continues with the sequential evaluation." *Id.* at *9. But that principle could not support the ALJ's decision when "the record reveal[ed] no substantive consideration of the Plaintiff's hematology-related limitations at the subsequent steps of the sequential evaluation process." *Id.* "In particular, there [was] no meaningful discussion of anemia-induced fatigue in the RFC portion of the ALJ's opinion, even though this was the very first symptom that the Plaintiff cited when asked why he could not work." *Id.*

*Morshed* also illustrates these principles. In that case, the plaintiff suffered from depression and anxiety, and from headaches and migraines that were "mentioned throughout the treatment

11

history and the record." 2020 WL 5814655, at *4. The ALJ found the plaintiff's depression and anxiety to be severe, but he "failed to evaluate any evidence of [the plaintiff's] migraines and headaches in the record, and did not make any severity determination with respect to" them. *Id.* On appeal, the court "conclude[d] that this was legal error." The Commissioner protested that "an error by the ALJ at step two regarding the assessment of severity is, in many cases, harmless," but the court held that that principle could not be invoked in Morshed's case. *Id.* at *5. "[T]his type of 'harmless error' finding is appropriate only when it is clear that the ALJ considered the claimant's headaches and their effect on his or her ability to work during the balance of the sequential evaluation process; remand is appropriate if the Commissioner fails to consider the omitted impairments at the subsequent steps." *Id.* "Without more explanation or indication that the ALJ considered the medical evidence of Morshed's headaches and migraines, the ALJ has not provided a rationale in the decision sufficient to allow this Court to conduct an adequate review of her findings."

In this case, there was evidence of knee problems and osteoarthritis in the record before the ALJ, yet he failed to evaluate it or make any severity determination with respect to it at Step Two. To cite but a few examples, the plaintiff's primary care physician, Dr. Solano, assessed her with "[u]ncontrolled" "knee buckling" on October 3, 2018. (R. 1643.) Her rheumatologist, Dr. Sheth, diagnosed her with "[p]rimary osteoarthritis of knees, bilateral" (R. 3565), and recounted her as reporting that her "ongoing knee pain" was "worse with activity, going up and down the stairs as well as prolonged standing." (R. 3558.) And the plaintiff testified that she could not "even last an hour standing" because of pain in her legs as well as her back and her feet. (R. 60-61.) Yet the ALJ's opinion contains no discussion of osteoarthritis or knee pain at Step Two.

Moreover, the opinion contains no meaningful discussion of the plaintiff's osteoarthritis or knee pain at the later steps of the sequential evaluation process. The Commissioner protests that the ALJ did "not[e] Plaintiff's knee injections" and "documented complaints of bilateral knee pain" in the later stages (ECF No. 21-1, at 8), and it is true that the opinion contains very brief references to both. (R. 29-30.) And to be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record[.]" *LaRock ex rel. M.K. v. Astrue*, No. 10-cv-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). But the discussion does need to be "sufficient to allow this Court to conduct an adequate review of [the ALJ's] findings." *Morshed*, 2020 WL 5814655, at *6 (citing *Carl D. v. Comm'r of Soc. Sec.*, No. 8:18-cv-1106 (DJS), 2019 WL 5537627, at *8 (N.D.N.Y. Oct. 25, 2019)). In this case, the discussion is so terse as to leave the Court unsure whether the ALJ even knew that the plaintiff had osteoarthritis – or whether he considered only those musculoskeletal complaints and limitations that he attributed to fibromyalgia. (*See* R. 30) (discussing "bilateral knee . . . pain" under heading of fibromyalgia); *see also Morshed*, 2020 WL 5814655, at *5 (holding that, where ALJ "did find at least one impairment severe, continued the sequential evaluation," and provided only a brief "mention" of "Morshed's headaches in the RFC analysis," he left the Court "unsure if [he] adequately considered the evidence and limitations of this impairment at step two and later steps").

The Commissioner raises other objections, but none are persuasive. For example, she finds it "[n]otabl[e]" that the Plaintiff "did not mention knee or hip conditions in paperwork submitted to the SSA" (ECF No. 21-1, at 5), but it is well established that such an omission does not necessarily defeat her claim. "[T]he [SSA's] regulations clearly provide that the fact 'that plaintiff did not specifically allege an impairment in his initial benefits applications is not dispositive[.]'"

*Keller v. Colvin*, No. 16-cv-6399 (MWP), 2017 WL 4112024, at *13 (W.D.N.Y. Sept. 18, 2017) (quoting *Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) and 20 C.F.R. § 404.1512(a)) (brackets omitted). "[T]he rule requires an ALJ to investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist, without regard to whether the claimant has alleged that particular impairment as a basis for disability." *Id.* (brackets and ellipsis omitted); *see also Isacc R. v. Kijakazi*, No. 3:20-cv-1172 (ATB), 2022 WL 306364, at *8 (N.D.N.Y. Feb. 2, 2022). The Commissioner also contends that the Plaintiff "did not mention knee or hip conditions . . . at the administrative hearing" (ECF No. 21-1, at 5), but this misconstrues the record. As noted above, the Plaintiff expressly identified severe leg pain as a principal reason for her inability to work (R. 60, 64), and specifically stated that corticosteroid injections in her knees had not resolved her problems. (R. 64-65) (Q: "The record shows you have received some injections in your knees and maybe other places. Do those help?" A: "The injections have not helped me at all. They don't help in the least.").

The Commissioner also argues that the Plaintiff's osteoarthritis and related claims of functional limitation do not meet "the regulatory definition of a severe impairment" because her complaints were limited, and because her condition "improve[d] . . . during the relevant period" and may not have met the twelve-month durational requirement. (ECF No. 21-1, at 5); *see also* 20 C.F.R. §§ 404.1509, -416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). And had the ALJ actually performed this analysis and reached those conclusions, his findings very well might have been entitled to deference from this Court. *Cf. Dawn Lyn C.*, 2021 WL 4398372, at *1 (observing that a Step Two decision, "like almost any other decision by an ALJ[,] is entitled to deference from this Court if it is free from legal error and supported by substantial evidence.").

But here, the ALJ did not say that the Plaintiff's osteoarthritis was non-severe because her complaints were limited, or because the condition was improving, or because it had not met the durational requirement.  (*See* R. 24-25.)  Rather, he did not analyze it at all.  And when an ALJ fails to analyze a claimed impairment, the Commissioner may not fill the void on appeal with new arguments about why the impairment was non-severe.  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *Rodriguez*, 2021 WL 738348, at *13 n.5 (rejecting argument that an Achilles tendon impairment was non-severe because "nothing in the ALJ's decision suggests that she considered" it at Step Two).

The cases cited by the Commissioner are inapposite.  In *Stephanie Prince v. Astrue*, for example, the plaintiff contended that "fibromyalgia constituted a per se disability under Appendix 1 of the" SSA's regulations.  514 F. App'x 18, 20 (2d Cir. 2013) (summary order).  In rejecting that contention, the Court of Appeals observed that "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Id.*  But that anodyne principle cannot defeat the Plaintiff's appeal in this case because the record contained more than a mere diagnosis.  As noted above, it also included additional information about her resulting claims of functional limitation.  (*E.g.,* R. 1643 ("knee buckling"); R. 3558 (rheumatologist note documenting Plaintiff's claim that symptoms worsen with "prolonged standing"); R. 60-61 (Plaintiff's testimony that she could not stand for an hour).)

*Navan v. Astrue* and *Arnone v. Bowen* are similarly distinguishable.  In *Navan*, the Second Circuit affirmed a District Court decision upholding an administrative denial of DI benefits because "the ALJ appropriately relied on the near absence of any medical records between March

1997 and June 1999 to find that Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition." 303 F. App'x 18, 20 (2d Cir. 2008) (summary order). And in *Arnone*, the Second Circuit likewise observed that a claimant's "failure to present any medical evidence from [1977 to 1980] seriously undermines his contention that he was continuously disabled during that time." 882 F.2d 34, 39 (2d Cir. 1989). In this case, the Commissioner urges the Court to uphold the ALJ's decision because the Plaintiff's medical records strike her as like Navan's and Arnone's; they "show limited complaints for knee or hip pain, and improvement in these conditions during the relevant period." (ECF No. 21-1, at 5.) But in *Navan* and *Arnone*, the ALJ had cited the paucity of the record as a basis for his decision. *Navan*, 303 F. App'x at 20; *Arnone*, 882 F.2d at 39. Here, by contrast, it is a *post hoc*, counsel-supplied rationalization of the sort barred by the principle of *Snell*. 177 F.3d at 134.

      The other cases cited by the Commissioner are distinguishable on the ground that the ALJ considered the allegedly non-severe impairments at the later stages of the sequential evaluation process. In *Edgardo R. v. Saul*, "[w]hile the ALJ made no mention of plaintiff's alleged degenerative disc disease, plantar fasciitis or recurrent hypokalemia/rhabdomyolysis at Step Two, he did discuss plaintiff's treatment of said conditions in the remaining parts of his subsequent evaluation." No. 3:19-cv-1874 (SDV), 2021 WL 4472720, at *9 (D. Conn. Sept. 30, 2021). In *Kami B. v. Saul*, "[t]he ALJ explained in detail why he did not find Plaintiff's carpal tunnel syndrome to be severe," but nonetheless "discussed potential limitations of Plaintiff's carpal tunnel in determining her RFC." No. 5:18-cv-1497 (DJS), 2020 WL 247279, at *4-5 (N.D.N.Y. Jan. 16, 2020). These cases are inapposite here, because in this case the ALJ neither explained why he found osteoarthritis to be non-severe nor did he discuss its functional implications at the later steps in sufficient detail. *Morshed*, 2020 WL 5814655, at *6 (observing that discussion must be

"sufficient to allow this Court to conduct an adequate review of [the ALJ's] findings."). This was legal error, and the Plaintiff is consequently entitled to remand. *Id.*

### B. The Plaintiff's Other Claims of Error

The Plaintiff makes several other claims of error. For example, she asserts that the "ALJ erred in framing an RFC, both as to exertional and non-exertional limitations, without the support of medical opinions." (ECF No. 16-2, at 4.) She also argues that the ALJ "failed to resolve any perceived deficiencies within the opinions of [her] treating physicians," "failed to account for her fibromyalgia pain," and improperly denied her benefits claim after concluding that her fibromyalgia was "stable." (*Id.* at 11, 12.) She likewise faults the ALJ for citing her occasional travel as evidence of non-disability. (*Id.* at 20.) The Plaintiff had traveled to Puerto Rico and Florida during the relevant period "to care for family members and/or attend funerals" (R. 27), and the ALJ listed these trips among his several reasons for discounting the severity of the Plaintiff's mental impairments and fibromyalgia. (*See* R. 27 (concluding that the Plaintiff had only a moderate limitation in the dimension of "interacting with others," in part because her travel "likely involved at least superficial contact with others"); R. 31 (concluding that the Plaintiff's fibromyalgia would allow for light work, in part because she "was able to travel," and "traveling would entail strolling of luggage into the airport and possibly through the airport").)

Some of these arguments are not without support in the record and in the law. To take one example, federal courts have faulted ALJs for making too much out of medical records noting that a claimant's condition is "stable." *E.g., Thornton v. Colvin*, No. 3:13-cv-1558 (CSH), 2016 WL 525994, at *9 (D. Conn. Feb. 9, 2016); *Perez Garcia v. Berryhill*, No. 3:18-cv-986 (WIG), 2019 WL 2022191, at *4 (D. Conn. May 8, 2019). As Judge Haight observed, that word merely tells the reader that "the condition is neither worsening nor improving;" it "says little if anything about

17

the severity of the patient's symptoms, and nothing at all about whether the symptoms or effect of the condition render the patient *disabled*." *Thornton*, 2016 WL 525994, at *9 (emphasis in original). Judge Garfinkel elaborated on this point in *Perez Garcia*: "The patient may be disabled; she may not be; the answer depends upon the nature and severity of the condition's symptoms, not upon whether at a given moment those symptoms are stable." 2019 WL 2022191, at *4.

To take another example, the inferences that the ALJ drew from the Plaintiff's travel appear to be unsupported. He concluded that the Plaintiff could perform light work with limitations, notwithstanding her fibromyalgia, in part because she had engaged in travel that "likely . . . would entail strolling of luggage into the airport and possibly through the airport, if not all of her luggage was checked in; waiting in security lines;" etc. (R. 31.) Yet in his brief hearing examination,[2] he did not ask her whether she carried her own luggage or had it carried by a friend; whether she was able to sit while in line; and so forth. (R. 58-63.) He noted that an airplane is, of course, a "highly limited physical area to stretch or move," and he considered this "inconsistent with her hearing testimony as to the amount of time she can sit/stand/walk as well as . . . with her testimony she lays down most of the day." (R. 31.) But occasional decisions "to endure pain in order to pursue important goals" are not dispositive of the question of disability unless the claimant's "conduct truly showed that he is capable of working." *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).

The Court nonetheless declines to decide these claims of error. When courts sustain one claim of error and remand the case for a rehearing, and where the other claims of error are based on a record that may change materially by the time of that rehearing, they often decline to decide

---

[2] The ALJ's examination occupies fewer than five pages of the hearing transcript. It begins at the very bottom of R. 58 and ends on R. 63.

18

the latter but instead simply instruct the Commissioner to consider them on remand. *See, e.g., Clarke v. Comm'r of Soc. Sec.*, No. 21-cv-1257 (KAM), 2022 WL 14760784, at *7 (E.D.N.Y. Oct. 25, 2022) (holding, after concluding that the ALJ erred at Step Three, that the Court "need not address Plaintiff's remaining arguments, which concern additional steps in the sequential disability determination"); *Morales v. Colvin*, No. 13-cv-6844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (declining to address additional arguments because "the ALJ's analysis may change on these points upon remand").  The Court will do so in this case.  On remand, "the ALJ must conduct a new evaluation of the evidence, which may alter the current administrative decision." *Clarke*, 2022 WL 14760784, at *7.

## IV.   Conclusion

In closing, the Court addresses the Plaintiff's request that the case be reversed and remanded for an award of benefits rather than a rehearing. (Pl.'s Mem., ECF No. 16-2, at 24.) To award that form of relief, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  That is not the case here.  The Court has examined the entire administrative record, and it has not found persuasive proof of the Plaintiff's disability.  Remand for calculation of benefits would therefore be inappropriate.

For the reasons stated above, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 16) is **GRANTED IN PART AND DENIED IN PART**.  It is granted to the extent that it seeks an order reversing the Commissioner's decision and remanding the case

for further administrative proceedings consistent with this opinion, and it is denied to the extent that it seeks an order remanding the case solely for a calculation and award of benefits. The Commissioner's Motion for an Order to Affirm the Decision (ECF No. 21) is **DENIED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge (ECF No. 9), who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiff, and to close this case.

So ordered this 31st day of December, 2023, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge